IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LARRY D. KEMP, an individual,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 06-cv-0282-MJR |
| ) | |
| **JAMES B. PEAKE, SECRETARY OF** ) | |
| **THE UNITED STATES DEPARTMENT** ) | |
| **OF VETERANS AFFAIRS, a federal** ) | |
| **agency,**[1] ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM and ORDER

**REAGAN, District Judge:**

### I. Introduction

Larry D. Kemp, a white male born on June 28, 1948, worked for the Department of Veterans Affairs at the Agency's Jefferson Barracks National Cemetery ("JBNC") from January 10, 1993, until August 6, 2004, when he was discharged. On April 6, 2006, Kemp, *pro se*, filed suit in this District Court against James B. Peake, Secretary of the United States Department of Veterans Affairs. Kemp's complaint alleges age discrimination against Peake. The Court now rules on Peake's fully-briefed summary judgment motion, beginning with an overview of relevant facts and the governing legal standards.

### II. Key Facts[2]

---

[1] On December 20, 2007, James B. Peake began serving as Secretary of the United States Department of Veterans Affairs, replacing Acting Secretary Gordon H. Mansfield. Pursuant to Rule 25(d)(1), Mr. Peake is automatically substituted as Defendant.

[2] These undisputed facts plainly appear in the record, in documentary material, or in deposition testimony submitted with the parties' memoranda.

1

Kemp began working for JBNC, in January 1993, initially working as a cemetery caretaker. Kemp was promoted three times, ultimately achieving the position of Cemetery Caretaker Supervisor in April, 1999.

After being appointed to this supervisory position, Kemp was the subject of several disciplinary actions. His initial discipline was in October, 2000, when he was reprimanded by Assistant Cemetery Director Jan Klahs for disrespectful conduct at the committal service of a deceased veteran. In March, 2002, Kemp was suspended without pay for twenty days for use of profane language and disrespectful conduct. In July, 2003, he was suspended without pay for thirty days for disrespectful conduct towards a supervisor.

In May, 2004, Kemp received a negative performance evaluation by Ralph Church, Director of JBNC. Kemp then filed a grievance with Church's supervisor, George M. Webb, Director of Memorial Service Network IV. Kemp complained that Church had, for years, retaliated and discriminated against him and had conspired to terminate his employment at JBNC.

In June, 2004, Church proposed to terminate Kemp from his employment based on charges that he was disrespectful and inappropriate to subordinate employees. The proposed removal letter allowed Kemp fourteen days to respond to Webb, who was the deciding official. Kemp timely submitted a written response, denying the charges and explaining how the incidents at issue occurred. Webb upheld Church's proposal and informed Kemp that his employment would be terminated, effective August 6, 2004. The decision letter advised Kemp of his right to file an appeal either to the Merit Systems Protection Board ("MSPB") or under the Agency's discrimination complaints procedure. Instead, Kemp requested retirement, which was immediately approved. In a Notification of Personnel Action, the nature of the action specified was "Retirement-Voluntary,"

and the effective date was August 6, 2004. The reason given for retirement was "to obtain retirement benefits."

On September 13, 2004, Kemp filed a formal complaint of discrimination, which was denied because the Agency found that he had failed to establish a prima facie case of discrimination. On June 24, 2005, Kemp appealed the Department's decision with the MSPB. The Administrative Judge sustained the charge of disrespectful and inappropriate conduct as to both of Church's specifications, and found that Kemp failed to meet his burden of proof by either direct or indirect evidence that his removal was based on age discrimination. On Petition for Review, filed September 22, 2005, the Board issued its Final Decision affirming the Administrative Judge's initial decision. Kemp then filed a petition with the Equal Employment Opportunity Commission, which concurred in the MSPB's final decision, finding no discrimination. The Commission informed Kemp of his right to file a civil action in federal district court, and the case currently at bar followed.

### III. Legal Standard Governing Summary Judgment Motions

Summary judgment is proper if the pleadings, depositions, interrogatory answers, admissions, and affidavits leave no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. **FED. R. CIV. P. 56(c);** *Celotex Corp. v. Catrett*, **477 U.S. 317, 322-23 (1986).** In determining whether a genuine issue of material fact exists, the Court views the record in the light most favorable to – and draws all reasonable inferences in favor of – the non-moving party.

Because the primary purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmovant may not rest on the pleadings but must respond, with affidavits or otherwise, setting forth specific facts showing that there is a genuine issue for trial.

***Oest v. Illinois Department of Corrections*, 240 F.3d 605, 610 (7th Cir. 2001)**. The nonmovant must do more than demonstrate some factual disagreement between the parties. ***Logan v. Commercial Union Ins. Co.*, 96 F.3d 971, 978 (7th Cir. 1996)**. The issue in dispute must be material. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. ***Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001)**.

Stated another way, only disputes that could affect the outcome of the suit under governing law properly preclude the entry of summary judgment. ***Outlaw* at 837 (citing *McGinn v. Burlington Northern R.R. Co.*, 102 F.3d 295, 298 (7th Cir. 1996). *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (A factual dispute is "genuine" only when there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in his favor.)**.

### IV. <u>Analysis</u>

#### A. <u>Age Discrimination Claim</u>

The Age Discrimination in Employment Act ("ADEA"), **29 U.S.C. § 623(a)**, prohibits employers from discriminating against individuals on the basis of their age. ***Horwitz v. Bd. of Educ. of Avoca School Dist. No. 37*, 260 F.3d 602, 610 (7th Cir. 2001)**. Specifically, the ADEA provides, "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age[.]" **29 U.S.C. § 623(a)(1)**.

Kemp, who was 56 years old at the time that he was allegedly discharged from his employment, contends that he performed his job satisfactorily, that he was "discriminated against because of his age," and that "his employment was terminated in part due to age discrimination," all in violation of the ADEA. As noted above, the ADEA prohibits employers from discriminating

4

against employees on the basis of their age. **29 U.S.C. § 623(a).**[3]

To succeed on a discrimination claim under the ADEA, a plaintiff must show that his termination or other adverse employment action would not have occurred "but for" his employer's motive to discriminate on the basis of age. ***Horwitz,* 260 F.3d at 610 (citing *Fuka v. Thomson Consumer Elecs.*, 82 F.3d 1397, 1402 (7th Cir. 1996))**. Age discrimination can be proved through either the direct method or the indirect burden-shifting method of proof outlined in ***McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)**.

1. **<u>Direct Method of Proof</u>**

To prevail under the direct method of proof, Kemp must provide evidence that, if believed by the trier of fact, would prove the fact in question "without reliance on inference or presumption." ***Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003) (quoting *Walker v. Glickman*, 241 F.3d 884, 888 (7th Cir. 2001) and citing *Miller v. Borden, Inc.*, 168 F.3d 308, 312 (7th Cir. 1999)).**

Direct evidence "essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." ***Id.* (citing *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000))**. Because such admissions "are rarely encountered," ***id.* (citing *Hoffman v. Caterpillar, Inc.*, 256 F.3d 568, 576 (7th Cir. 2001))**, a plaintiff may also "prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decision-maker.'" ***Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005) (citing *Rhodes v. Ill. Dept. of Transp.*, 359 F.3d 498,**

---

[3] An employee must be at least 40 years old to pursue an age discrimination claim. **29 U.S.C. § 631(a).**

504 (7th Cir. 2004) and *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 737 (7th Cir. 1994))**. However, this circumstantial evidence "must point directly to a discriminatory reason for the employer's action." *Id.* **(quoting *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003))**.

Kemp does not allege that any decision-maker admitted that his actions were based on Kemp's age. However, he does provide some circumstantial evidence of intentional discrimination in support of his claim. Circumstantial evidence falls into three general types: 1) suspicious timing, ambiguous statements, behavior or comments directed at other employees in the protected group, and other conduct or information from which an inference of discriminatory intent might be drawn; 2) employees similarly situated to the plaintiff other than in the characteristic (here, age) on which an employer is forbidden to base a difference in treatment received systematically better treatment; and 3) evidence that the plaintiff was qualified for the job in question but passed over in favor of a person not having the forbidden characteristic and that the employer's stated reason for the difference is a mere pretext for discrimination. ***Sun v. Bd. of Trs. of Univ. of Illinois*, 473 F.3d 799, 812 (7th Cir. 2007);** *Troupe,* **20 F.3d at 736**.

On or about July 2, 2003, prior to the effective date of Kemp's thirty-day suspension, Church questioned Kemp about his age and recommended that he call Human Resources for a print-out of his retirement benefits. Church himself then called Linda Hanabitt in Human Resources and requested the information. Peake contends that Kemp offers no other alleged evidence to support his claim and that, even if true, these statements and actions do not constitute a "convincing mosaic" sufficient to defeat summary judgment.

Kemp responds with evidence showing that the employees who appear to be similarly

6

situated to him, the other two JBNC foremen, Ron Orr and Dennis Womack, received systematically better treatment from their supervisors. He provides affidavits from his co-workers which indicate that (1) he "had a strained relationship" with Church and was Church's "whipping boy," Simono Aff. 8:10-14; (2) he was not treated like the other foremen and received twice as many radio calls as the other foremen, Fuller Aff. 5: 15-17; (3) he was "picked on" a lot, given different kinds of jobs which were almost impossible for one person to do and that should have been distributed evenly among the foremen, *id*.; (4) he was "picked on" and retaliated against by Klahs and Church and was not allowed to go to union management meetings, Spieckerman Aff. 7:5-25; (5) Church was harassing Kemp, calling him constantly, interrupting his job as a foreman, where 80-85% of Church's radio calls on a daily basis were to Kemp, Scott Aff., 8:1-10; and (6) Church "was always hollering, Larry do this. Larry do this. Larry do this, on the radio. You know, 1 to 4, 1 to 4, 1 to 4. It was continuous, all day long. . . ." James Aff. 9:1-7. In sum, Kemp contends that Church's and Klahs's orders and conduct toward him were contradictory, prevaricatory, retaliatory and that he was "set up." Kemp must show, however, that the alleged conduct was based upon the prohibited animus. He must establish that he was discriminated against "because of" his age and not simply because his employer disliked him. ***Molino v. Alden Northmoor Rehabilitation and Health Care Center, Inc.* 2004 WL 421743, *4 (N.D.Ill. 2004) (collecting cases)**. Kemp must "establish a nexus between his evidence and age discrimination in that 'but for' his age, he would not have been terminated" or systematically treated less well than the other foremen. ***Dale v. Chicago Tribune Co.*, 797 F.2d 458, 465 (7th Cir.1986) (stating that evidence that supervisor "harbored a personal vendetta against" the plaintiff was not relevant for the ADEA claim because "personal animosity" cannot be the basis for an ADEA claim);** *see also Pierce-Daniels*

7

***v. Potter*, 2003 WL 22532821, at \*3 (N.D.Ill. 2003) (stating that a plaintiff cannot support a Title VII claim by showing that the employer discriminated against the plaintiff because of a "personal dislike")**. "[F]ederal anti-discrimination laws require only that the employer refrain from using age or another protected characteristic in making adverse employment decisions." ***Biolchini v. General Electric Co.*, 1998 WL 155930, at \*8 (N.D.Ill. 1998) (citing *Monroe v. Children's Home Ass'n of Illinois*, 128 F.3d 591, 593 (7th Cir. 1997))**.

The single, isolated instance in which Church inquired about Kemp's age and obtained retirement benefits information for him is insufficient to establish a genuine issue of material fact as to whether Church's and Klahs's conduct was based on his protected status. ***See Graziano v. Village of Oak Park,* 401 F.Supp.2d 918, 935 (N.D.Ill. 2005) (citing *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 566-67 (7th Cir. 2004))**. In sum, the circumstantial evidence adduced by Kemp does not point "directly to a discriminatory reason for the employer's action." ***Jordan,* 396 F.3d at 832**. Accordingly, the Court concludes that Kemp has failed to construct a "convincing mosaic" of circumstantial evidence that would "allow[] a jury to infer intentional discrimination by the decision-maker." ***See id***. Therefore, Kemp's age discrimination claim fails under the direct method of proof.

### 2. Indirect Method of Proof

A plaintiff claiming age discrimination may also prevail under the indirect method of proof. Under this approach, first the plaintiff must establish a prima facie case of age discrimination. ***Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061 (7th Cir. 2003)**. If the plaintiff does so, the employer, to avoid liability, must produce a legitimate, nondiscriminatory reason for its adverse employment decision. ***Id.* (citing *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th

**Cir. 2002))**. If the employer does this, then the plaintiff must rebut that explanation by presenting evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual (*i.e.*, a lie). ***Cerutti*, 349 F.3d at 1061. *See also Steinhauer v. DeGolier,* 359 F.3d 481, 483 (7th Cir. 2004)**.

Thus, the initial question is whether Kemp has made a prima facie case of age discrimination. This requires Kemp to prove the following four elements:

(1) he was over 40 years old;
(2) he was meeting his employer's legitimate job expectations;
(3) he suffered an adverse employment action; and
(4) he was treated less favorably than younger, similarly situated employees.

***Griffin v. Potter*, 356 F.3d 824, 828 (7th Cir. 2004) (citing *Schuster v. Lucent Techs., Inc.*, 327 F.3d 569, 573 (7th Cir. 2003))**.

Kemp easily satisfies the first element of the prima facie test, as it is undisputed that he was born on June 28, 1948, and that he retired or was discharged from the federal service at JBNC on August 6, 2004. He was, therefore, 56 years old at the time of the alleged adverse employment decision.

Peake contends that Kemp is unable to meet the second element of the test since he was disciplined no fewer than three times. In October, 2000, Kemp was issued a reprimand for disrespectful conduct at a committal service of a deceased veteran. Doc. 50, Exh. 7. In January, 2002, Klahs proposed to suspend Kemp for ten days for disrespectful conduct and use of profane language. Doc. 50, Exh. 10. Later that month, Klahs informed Kemp that, rather than a ten-day suspension, Kemp would incur a reduction in grade from cemetery caretaker supervisor to cemetery caretaker. In March, 2002, Kemp was given a twenty-day suspension for misconduct.

In May, 2003, Klahs informed Kemp, in his mid-term performance review, that his

9

level of performance had been unacceptable during the previous six months. Doc. 50, Exh. 13. She stated that he had failed to adequately plan and direct the work of his subordinates and listed five examples illustrating perceived deficiencies in Kemp's performance. *Id*. She instituted a process for daily monitoring the tasks Kemp's subordinates were to perform and for follow-up on the tasks that had been performed. *Id*. Klahs's review led to an altercation wherein both parties raised their voices. Doc. 50, Exh. 15. The encounter led to Klahs's proposing to suspend Kemp for thirty days for disrespectful conduct towards a supervisor. *Id*.

On June 30, 2004, Church proposed removing Kemp from his position for two specifications of disrespectful and inappropriate conduct toward a subordinate. Doc. 50, Exh. 19. In the first Specification, it was charged that an employee told Kemp that he was tired of Kemp talking down to him, whereupon Kemp stood on the seat of a chair and said, "'You mean like this?' or words to that effect." In the second Specification, Church charged that Kemp had, "on divers occasions," directed employees to perform duties in contravention of medical restrictions.

Kemp counters that he was meeting Peake's legitimate job expectations. He offers evidence that between January 1993 and April 1999, he received fully successful appraisals, two exceptional performance appraisals and two employee of the quarter awards. Doc. 50, Exhs. 3-5. Kemp also contends that he attempted to comply with Church's and Klahs's orders. For example, when Church complained to Kemp about certain employees leaving their work area early and not going the direct route to their assigned duty location, he gave these employees a written warning that continued joy riding or leaving a work area early without a good excuse would result in disciplinary action. Doc. 50, Exh. 19. As another instance, Kemp attempted to meet with Klahs, as instructed in his mid-term performance review, but the meeting ended in an altercation. Doc. 50, Exh. 15.

10

Kemp also maintains his supervisors dealt with him in a manner that was disproportionately severe. He asserts that no disciplinary action was taken against two employees who buried veterans in the wrong graves. Also, one foreman received only a letter of counseling when he drove the remains of a deceased veteran to an auto body shop in downtown St. Louis. On the other hand, Kemp was given a letter of reprimand for asking a funeral director to ask the deceased veteran's family to leave the shelter after the close of the ceremony, was reduced in grade for saying the "F word" in front of four employees and was removed from federal service for allegedly "talking down" to an employee and instructing another employee to perform a task he did not want to do.

Lastly, Kemp questions whether Church's and Klahs's job expectations were "legitimate," relying on the evidence set forth above regarding the treatment meted out to him compared to the systematically better treatment accorded to Orr and Womack.

Both Kemp and Peake have presented substantial evidence on this issue. Essentially, Peake argues that Kemp did not meet his legitimate expectations, and Kemp argues that he did. A dispositive motion is a singularly inappropriate time to resolve this sort of "he said she said" dispute. ***See Russell v. Bd. of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 340 (7th Cir. 2001)**. Therefore, the Court finds sufficient evidence of a triable issue of fact as to whether Kemp met his employer's legitimate expectations, such that summary judgment on this basis is inappropriate.

As to the third element of the analysis, Kemp maintains that he suffered an adverse employment action in that he was fired or constructively discharged. Peake responds that Kemp retired voluntarily. The United States Court of Appeals for the Seventh Circuit has defined adverse employment action as a "materially adverse change in the terms and conditions of employment [that

11

is] more disruptive than a mere inconvenience or an alteration of job responsibilities." ***Stockett v. Muncie Indiana Transit System*, 221 F.3d 997, 1001 (7th Cir. 2000)**. The law of this Circuit also holds that constructive discharge can occur "when an employer prompts a resignation by subjecting the employee to working conditions that a reasonable person would find unbearable." ***Griffin*, 356 F.3d at 830 (citing *Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742, 744-45 (7th Cir. 2002); *E.E.O.C. v. Univ. of Chicago Hospitals*, 276 F.3d 326, 331 (7th Cir. 2002)**. The Court concludes that Kemp has made a sufficient showing that the trier of fact could conclude that he suffered an adverse employment action rather than that he retired voluntarily.

It is on the fourth element, that he was treated less favorably than younger, similarly situated employees, that Kemp's prima facie case fails. Kemp contends, albeit misguidedly, that he is "very comparable" in age and situation to Orr and Womack, and yet he "was singled out and treated more severe [sic] than the two other foremen." Doc. 50, p. 11. "'Generally, when both the plaintiff and those allegedly favored over him are within the same protected class, 'the prima facie case under the ADEA require[s] a sufficient disparity in ages.'" ***Bennington v. Caterpillar Inc.*, 275 F.3d 654, 659 (7th Cir. 2001) (citing *Hartley v. Wisconsin Bell, Inc.*, 124 F.3d 887, 892 (7th Cir. 1997))**. The Seventh Circuit "consider[s] a ten year difference in ages to be presumptively 'substantial.'" ***Id*. (citing *Hartley*, 124 F.3d at 892)**.

In Peake's Memorandum, he states that both Church and Webb are over forty years of age, but these are Kemp's supervisors and, thus, are not "similarly situated" individuals. ***Radue*, 219 F.3d at 617-18 (Plaintiff's showing that employees are similarly situated normally entails establishing that the employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating**

12

**circumstances as would distinguish their conduct or the employer's treatment of them**.). Peake's Memorandum contains no mention of Orr's and Womack's ages.

Although it is not the Court's responsibility to scour the record in search of facts that should have been provided, *U.S. ex rel. Garst v. Lockheed- Martin Corp.*, **328 F.3d 374 (7th Cir. 2003)**, the Court has reviewed the record carefully, including some 300 pages of documents and exhibits related to the instant motion, and has discovered that both Orr and Womack are very close to Kemp in age. Doc. 50, Exh. 24; Doc. 42, Exh. 13. Kemp, who was 56 at the time of his termination, states that Orr was in his late forties or early fifties and that Womack was in his mid-fifties. Doc. 42, Exh. 13. Although the ages are not stated with certainty, it seems clear that the other foremen were less than ten years younger than Kemp, if, indeed, Womack was younger at all.

"In this Circuit the comparator must be 'substantially younger,' not merely 'younger,' than the plaintiff." *Graziano,* **401 F.Supp.2d at 934 (citing *Radue*, 219 F.3d at 619)**. "And 'substantially' means that the difference in ages must be at least ten years." ***Id.*; *Hoffmann v. PRIMEDIA Special Interest Publ'ns*, 217 F.3d 522, 524 (7th Cir. 2000)**. A gap of less than ten years is "presumptively insubstantial," and a plaintiff can prevail in such a situation only through producing additional evidence that the employer considered his age as a factor in the employment decision. ***Id.* (citing *Hoffmann*, *id.*)**.

As the Court concluded above, Kemp fails to establish that his employer considered his age as a factor in his conduct towards Kemp or in any employment decision. Assuming, *arguendo*, the Kemp was treated less favorably than Orr and Womack, Kemp's claim is unavailing because he has failed to link the conditions of his employment to any age-related bias on the part of Peake.

13

Inasmuch as Kemp has failed to establish a prima facie case of age discrimination under the ADEA, his claim fails, and summary judgment must be entered for Peake on this issue.

B. **Retaliation or reprisal claim**

Kemp claims that he was retaliated against for reporting the three serious mishaps set forth above, *i. e.*, burying deceased veterans in the wrong graves and driving the remains of a deceased veteran to an auto body shop.

"Title VII makes it unlawful 'for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by [Title VII]." ***Tomanovich v. City of Indianapolis* 457 F.3d 656, 662 (7th Cir. 2006) (quoting 42 U.S.C. § 2000e-3(a))**. "A plaintiff may prove retaliation by using either the direct method or the indirect, burden-shifting method." ***Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 903 (7th Cir. 2005)**. Under either the direct or the indirect burden-shifting method, a plaintiff must show that he was engaged in statutorily protected activity. ***Id.* (citing *Sitar v. Indiana Dep't of Transp.*, 344 F.3d 720, 728 (7th Cir. 2003)**.

Moreover, ". . . the complaint must indicate that the discrimination occurred because of sex, race, national origin, or some other protected class." ***Tomanovich* 457 F.3d at 663 (citing *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1147 (7th Cir. 1997)**. "Merely complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient." *Id.* **(citing *Gleason*, 118 F.3d at 1147 (holding that the plaintiff's general complaint about management style without raising the subject of sexual harassment fails to constitute protected activity); *Sitar*, 344 F.3d at 727 (affirming the district court's grant of summary judgment to the employer on the plaintiff's**

14

**retaliation claim because the plaintiff's complaint to his employer "did not invoke any action protected by Title VII") (additional citations omitted)**.

Kemp's complaint invokes neither statutorily protected activity nor a causal link between that activity and the alleged retaliation. Kemp's claim fails, and summary judgment must be entered for Peake on this issue.

### C. The Camp Butler foreman position

Kemp alleges that he applied for the foreman position at Camp Butler National Cemetery in April 2004. He was not hired even though he was more qualified than the other applicant who was interviewed.

Peake responds that Kemp has not exhausted his administrative remedies as to this claim. Peake provides the affidavit of EEO intake specialist, W. Gregg Buckner. Doc. 42, Exh. 17, Buckner Declaration. According to Buckner, Kemp has filed only one formal complaint of discrimination against the Department of Veterans Affairs. *Id*. The only issued raised in that complaint was that Kemp ". . . was forced to retire in lieu of termination on or about August 6, 2004." *Id*. Kemp did not file a formal complaint of discrimination in connection with his non-selection for the foreman's position at Camp Butler. *Id*.

The law of this Circuit plainly holds that the scope of an EEOC charge limits the scope of the subsequent federal court complaint. ***See, e.g., Babrocky v. Jewel Food Co. & Retail Meatcutters*, 773 F.2d 857, 863 (7th Cir. 1985).** Stated simply, this rule holds: "Generally, a Title VII plaintiff may bring only those claims that were included in [his] EEOC charge." ***McKenzie v. Illinois Department of Transportation*, 92 F.3d 473, 481 (7th Cir. 1991)**.

The reason for the rule is simple:

> An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination. This limitation is consistent with the principle of primary jurisdiction in the agency, for it gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts.

***Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)**.

The Seventh Circuit consistently has reiterated the policy against allowing an employment discrimination complaint to encompass allegations outside the ambit of the predicate EEOC charge. The Court has announced a test for delineating whether an EEOC charge sufficiently embraces the claims raised in a later-filed complaint:

> all Title VII claims set forth in a complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Jenkins v. Blue Cross* . . . . [T]he test of *Jenkins* is satisfied if there is a reasonable relationship between the allegations in the charge and the claims in the complaint, and the claim in the complaint can reasonably be expected to grow out of an EEOC investigation of the allegations in the charge.

***Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).**

In Kemp's only formal complaint of discrimination against the Department of Veterans Affairs the sole issue raised was that he "was forced to retire in lieu of termination on or about August 6, 2004." Buckner Declaration. Kemp's claim that he was not hired for the Camp Butler job in spite of being well-qualified is neither like nor reasonably related to the allegation that he was forced to retire from his position at JBNC in lieu of termination. Nor can the failure to hire at Camp Butler reasonably have been expected to "grow out of an EEOC investigation" of his being forced to retire. Therefore, any claims related to the Camp Butler position are not cognizable herein because Kemp failed to exhaust his administrative remedies as to this issue.

## V. Conclusion

The pleadings, depositions, and other evidence before the Court reveal that there is no genuine issue of material fact and that Peake is entitled to judgment as a matter of law.

Accordingly, the Court **GRANTS** Peake's motion for summary judgment (Doc. 41) and **DIRECTS** the Clerk of Court to enter judgment in favor of Defendant Peake and against Plaintiff Kemp.

**IT IS SO ORDERED.**

**DATED this 29th day of January, 2008**

s/Michael J. Reagan
**MICHAEL J. REAGAN**
**United States District Judge**